Before Rush, Riddle, Addison, Henry and Coxe, Presidents of the
Common Pleas.

---

### Ewing and wife, Plaintiffs in error, *v.* Houston and wife.

#### *Partition.— Variance.*

A summons in partition, described the property to be divided, as follows: "One ferry at the
river Susquehanna, in Hellam township, &c., six messuages, &c., with the appurtenances, in
the same township of Hellam, in, &c.:" the writ of partition, in the recital of the summons,
had these words: "with the appurtenances, in the same township of Hellam and Windsor,
in, &c.;" and in the specification of the property, the ferry was omitted, though it was named in
another part of the writ: the inquisition enumerated among the premises which were divided,
the "ferry, and also a fishery on the river Susquehanna, at or near the said ferry, &c.:" *Held,*
that these variances were not fatal.

It did not appear, by the return of the writ of partition, that the parties attended, or were
warned to attend at its execution, and the inquisition did not state, that the property was as-
signed and delivered, but merely, that it was allotted: *Held,* that the partition was valid.

In Error from the Supreme Court. A writ of summons in partition was
issued by the plaintiff in error, in the court of common pleas of York county,
returnable to September term 1792, by which the defendant in error was
summoned to show wherefore the following property, held by the parties,
as tenants in common, should not be divided : to wit, "one ferry at the river
Susquehanna, in Hellam township, in the county aforesaid, six messuages, one
barn, four stables, four gardens, one orchard, 250 acres of arable land, and
371 acres of woodland, and the usual allowance of six per cent., with the
appurtenances, in the same township of Hellam, in the said county of York."
The writ being returned, "summoned," both the parties appeared by
their attorneys, the plaintiffs filed a declaration, setting forth their title,
and demanding partition of the same estates that were specified in the
writ; and judgment was rendered, by consent, in general terms, "that par-
tition be made." A writ of partition accordingly issued on this
*68] judgment, returnable *to December term 1792, when "the sheriff re-
turned the writ, that partition had been made according to the command
thereof;" both the parties appeared by their attorneys ; and judgment was
rendered, "that the partition so made be confirmed, and be and remain firm
and stable for ever." The writ of partition recited the words of the writ of
summons, except that in describing the place where the several estates were
situated, the recital added the township of Windsor, to the township of
Hellam, stating the premises to lie, "with the appurtenances, in the same
township of Hellam and Windsor, in the county aforesaid :" It then pro-
ceeded to recite the judgment, "whereupon, it was considered by the said
court, that partition thereof between the parties aforesaid be made :" and con-
cluded with the mandatory clause to the sheriff : "Therefore, we command
you, that taking with you twelve honest and lawful men of your bailiwick,
&c., in your proper person, you go to the said ferry, &c.; and there, by the
oaths or affirmations of the said twelve men, in the presence of the parties
aforesaid, by you for that purpose to be warned (if upon being warned they
will attend), and the said six messuages, &c., (specifying all the estates men-
tioned in the writ except the ferry), with the appurtenances (having respect

Ewing v. Houston.

to the value thereof), into two equal parts you cause to be parted and divided; and one of the said equal parts to the said plaintiffs, &c., and the other equal part unto the defendants, &c., to hold to them in severalty, you assign and deliver, so that neither the said plaintiffs, &c., nor the said defendants, &c., have more of the said ferry, six messuages, &c., with the appurtenances, than to them of right belong or appertain : and the said plaintiffs, &c., their equal half part thereof to them allotted, and the said defendants, &c., the other equal part thereof to them allotted, may hold in severalty. And that the partition thereof, so openly and distinctly by you in form aforesaid made, you have before our judges, &c." The inquisition held under this writ of partition, after naming the persons constituting the inquest, stated, " that they were duly sworn and affirmed to divide and make partition of one ferry, at the river Susquehanna, in the township of Hellam, and county of York aforesaid, six messuages, &c., with the appurtenances, in the same township of Hellam and Windsor, in the county aforesaid, between the plaintiffs, &c., and the defendants, &c." And after dividing and parting the whole into two equal parts, the inquisition proceeded to a specification, that the inquest " have parted and divided the said ferry, messuages, lands and premises with the appurtenances into two equal parts, having regard to the true value thereof. And the lot marked on the annexed draft No. 1, containing the said ferry at the river Susquehanna, with all the flats, &c., thereunto belonging ; the lot marked in the said draft No. 2, &c.; and *the tract of land marked No. 3, &c.; also a fishery on the river Sus- [*69 quehanna, at or near the said ferry, together with each and every of their rights, &c., they have allotted to the said plaintiffs, their heirs and assigns for ever," &c. (a) A writ of error was brought by the plaintiff in the partition, on the judgment of the common pleas, but that judgment being affirmed by the supreme court, the cause was removed into this court, by the same party.

For the plaintiff in error (who was also the plaintiff in the partition), *Lewis* made the following objections to the proceedings :

1. That the original writ, declaration and judgment, only calls for a partition of lands in Hellam township ; but the judicial writ recites the original writ to have been for lands in Hellam and Windsor townships, and commands a division of them ; and the return and final judgment are for lands in Hellam and Windsor townships. The declaration, judgment and execution must pursue the writ ; and if the execution does not pursue the judgment, it is nullity. Execution is obtaining the actual possession of the thing recovered by law ; but the lands in Windsor township never were recovered. (1 Inst. 154 a ; Ibid. 289; 2 Bac. Abr. 329.) It is evidently an error of the attorney ; but can he correct his errors in this way? The authorities, both in criminal and civil cases, show the contrary ; for although it may not be necessary to name a township, town, street, &c., in the process and pleadings, if they are named, they must be proved. (2 Hawk. P. C. c. 46,

---

(a) Though there was no other description of the fishery, yet the defendant's counsel insisted that both the ferry and the fishery were appurtenant to lot No. 1; and the assertion seemed to be supported, on an inspection of the draft to which the inquest referred. The ferry was kept on a part of lot No. 1; and the fishery, being located within the boundaries of the same lot, would be "at or near the ferry."

Ewing v. Houston.

§ 34 ; Salk. 661 ; Bull. N. P. 89 ; Hob. 37–8 ; 2 Inst. 513.)   Is it possible, how-
ever, to maintain, that an execution can issue for a greater quantity of lands, or
for different lands, than what is recovered by the judgment upon which it is
founded? The law is incontestably established, that the slightest variance in the
recital of a record, as between the count and the writ, so between the judgment
and the execution, is fatal. (Cro. Eliz. 185, 329, 330, 829 ; 2 Lutw. 1179, 1181 ;
2 Vent. 153 ; Gilb. C. B. 50–3, 239.)   Besides, the statutes of *jeoffaille* do
not extend to judicial writs, when the party has no day in court : and under
the authority of the present judicial writ, any other lands might as well have
been divided as those demanded in the declaration and recovered by the
judgment.

*70]   2. That the original writ, the declaration and the judgment, are for
a ferry, six messuages, &c., but the judicial writ omits *the ferry in the
mandatory clause ; and yet the ferry is divided by the inquest, who could
only act to the extent of the command and authority in the writ of partition.
This, too, is a mistake ; but the consequences would be ruinous, indeed, if it
could not be arbitrarily corrected by the sheriff or the inquest.   The sheriff
must execute the command of the court, doing neither more nor less ; as he
was not commanded to divide the ferry, he had no authority to do so ; and
of course, the division is a nullity.   (Hob. 37–8 ; Moore 19.)

3. That the inquest have assigned a fishery to the plaintiffs, which never
was put in demand ; and the defendants sweep the same water. (2 Bl. Com.
190, 191 ; 2 Keb. 413, 580.)

4. That it does not appear, on the sheriff's return, that the parties at-
tended, or were warned to attend, the execution of the writ of partition ;
though this was commanded by the writ, is required by the law, and is
recognised by all the precedents.

5. That the return to the writ of partition does not state that the prem-
ises were assigned and delivered to the respective parties, as the writ directs ;
but merely that they were allotted.

These objections were answered by *Ingersoll* and *Hopkins*, for the
defendant in error, substantially as follows :

1. That every intendment will be made in favor of a judgment (2 Keb.
413) ; and it is admitted, that all the proceedings are regular until the issu-
ing of the judicial writ.   In the execution of that writ, also, the court will
presume the sheriff has acted lawfully and faithfully, until the contrary is
shown.   But it appears, on a connected view of the record, that the prop-
erty demanded, is the same property that was divided, the words " same "
and " thereof " applying relatively from the first to the last of the process,
as designating the same specific property.   It is true, that the name of
Windsor township is first introduced in the judicial writ ; but if the
introduction is not tolerated as an amendment for the sake of greater cer-
tainty, it ought to be disregarded as surplusage.   The writ of partition
was issued by the plaintiffs, who cannot take advantage of their own error
(Moore 692 ; 5 Com. Dig. 301 ; 3 Bl. Com. 16) ; the judgment on the
return, it will be presumed, was rendered at their instance, at least, they
appeared by an attorney on the record ; and there has been a long acqui-
escence of the parties.

2. That the ferry, though accidentally omitted in one clause of the judicial

Livezey v. Gorgas

writ, is mentioned in other of its clauses, and is contemplated in every part of the record as an object of partition. It belongs to lot No. 1, and may be considered as appurtenant to it.

3. That the fishery was appurtenant to lot No. 1, and was named in the inquest, merely as a matter of detail and specification.

*4. That notice to the parties is proved, on two grounds; first, [*71 because the writ commands it, and the sheriff returns, that he has executed the writ according to the command thereof ; and secondly, because the plaintiffs issued the writ, they were present by attorney when it was returned, and at that time never complained. But even if no notice had been given, there was another remedy ; and the objection comes too late on a writ of error. (5 Com. 301.)

5. That the writ of partition directs the premises to be divided, assigned and delivered ; it is recited in the inquest; and the sheriff returns, that he has obeyed the command of the writ. When, therefore, the inquest declare that they have allotted the moieties to the respective parties, it must be deemed an allotment, according to the terms of the command and authority under which they acted.

On the last day of the session, the court mentioned, that some doubts had arisen, which would prevent a decision of the cause until the adjourned session ; but that, in the meantime, for their own information, they should direct a *certiorari* to issue to the court of common pleas of York county, to inquire whether any precept had been given, authorizing the writ of execution, or judicial writ of partition, to issue ; and if so, to return it. (*a*)

*Cur. adv. vult.*

At an adjourned session, held on the 17th of January 1800, the court unanimously affirmed the judgment of the supreme court.

Judgment affirmed.

---

(*a*) *Lewis* suggested a doubt, whether a *certiorari* could issue *per saltem*, to the common pleas, overleaping the supreme court, on whose judgment the writ of error was brought ; but he agreed to give effect to any mode that might be taken to ascertain the fact in question, and to consider any precept that issued, as regularly annexed to the record.